STATE, EX REL. WILLIAM E. SKINNER, v. JOHN W. BOGERT, COLLECTOR OF BERGEN COUNTY.

The act of March 14th, 1879, (*Pamph. L.*, *p.* 349,) was within the power of the legislature to pass, and the law judges described therein are not entitled to any *per diem* compensation since its passage.

On rule to show cause why *mandamus* should not issue, requiring the collector of Bergen county to pay to the relator $230, for the *per diem* allowance for his services in the courts of that county, from April 1st, 1879, up to and including September 1st, 1879.

Argued at February Term, 1880, before Justices REED and MAGIE.

For the relator, *W. E. Skinner, in pro. pers.*

For the defendant, *A. D. Campbell.*

The opinion of the court was delivered by

MAGIE, J. The relator was commissioned as the presiding judge of the Court of Common Pleas for Bergen county, April 1st, 1878, and his term of office, by the constitution, is fixed at five years. By the act prescribing such an appointment, the presiding judge of that court was entitled to receive an annual salary of $1500. *Pamph. L.* 1868, *p.* 295. By a subsequent act, all judges of the Inferior Court of Common Pleas were entitled to receive a *per diem* allowance of $5 for each day actually occupied in the discharge of their duties. *Pamph. L.* 1873, *p.* 110. Under these acts, the relator seems to have claimed and received the annual salary prescribed by the act of 1868, and in addition thereto, the *per diem* allowance prescribed by the act of 1873. Since April 1st, 1879, the collector has declined to pay the relator the *per diem*

allowance, alleging that, by virtue of the provisions of the act of March 14th, 1879, (*Pamph. L., p.* 349,) the relator is not entitled thereto. The applicability and validity of the last-mentioned act, is the sole question presented in this case.

It is first contended that the act must be construed to affect only judges hereafter to be appointed. It is undoubtedly true that statutes are to be construed only as prospective in their effect, unless a retrospective intention clearly appears. But this rule is quite inapplicable to this statute, which is manifestly intended to affect not the judges, but the receipt of certain allowances by the judges. It is wholly prospective in forbidding the future receipt of such allowances.

It is next insisted that the act is unconstitutional, as abrogating or interfering with a term of office fixed by the constitution. This contention is plainly inadmissible, because the act in no way attempts to limit or shorten the term relator has to serve, or to restrict the performance of his duties. If it be true that a total deprivation of his compensation should be considered as a practical abrogation of the official term, this act preserves the salary of the officer, which was thought sufficient compensation at the time the office was provided for.

The other objections do not seem to require any special notice, except that which I now consider. The claim made is that the act is unconstitutional; first, because it is in conflict with the clause in Art. IV., § 7, ¶ 4, of the constitution, which provides that "no general law shall embrace any provision of a private, special, or local character;" and, second, because it is in conflict with Paragraph 11 of the same section, which provides that "the legislature shall not pass private, local, or special laws, * * * creating, increasing, or decreasing the percentage or allowance of public officers, during the term for which said officers were elected or appointed."

The question, then, is whether the act in question is a private, local, or special law, or contains a provision of that character. It is clear that it decreases the allowance of public officers during the term of their office, and that, under the

Skinner v. Collector.

general title, "An act in relation to the compensation of president judges of the Courts of Common Pleas," its enactments are effective only in respect to certain president judges, and do not include or affect others. If, therefore, this act is a "private, local, or special law, or the peculiar provisions above referred to are of a "private, local, or special character," then the relator's contention would seem to be correct.

The constitutional provisions in question are part of the amendments adopted in 1874. The identical question here presented has never been previously discussed, but some questions of construction have been settled, which will aid this inquiry. Thus, in *Van Riper* v. *Parsons*, 11 *Vroom* 1, this court settled that a law, fairly classifying certain objects of legislation, by a classification which includes all of such objects naturally related to each other, and legislating alike in respect to a class or classes thus formed, would not be objectionable under the constitutional clauses in question. And the Court of Errors, in the same case, (11 *Vroom* 123,) declares that a law, in terms general, operating on an object or class of objects, possessed of characteristics sufficiently marked and important to make them clearly a class by themselves, and operating equally on all the class, is not a private, local, or special law, although it may, in fact, affect but a small number of objects, or even a single object. And in *Rutgers* v. *New Brunswick, ante p.* 51, this court declares that a correct classification is one that is founded on such qualities as make the objects to which the legislation applies, a class by itself.

The principles thus settled are not questioned in this case, but it is contended that the act in question violates them. It is insisted that the act is objectionable because, first, it legislates as to some, and not all of the judges of the Inferior Courts of Common Pleas in the state; second, as to some and not all of the president or law judges of those courts; third, because, in classifying the objects of its enactment, it does not include all those naturally included in the class, being restricted to such judges as are serving in counties of less

than one hundred thousand inhabitants, and only to such of them as "now" receive an annual salary; and fourth, because, by these peculiar provisions, the law is, in fact, operative in only a few counties, and so is local.

The transition from the unrestrained liberty of local and special legislation, which had been permitted in this state from its earliest history, to the limitations and restrictions imposed by the amended constitution, may be expected to produce many laws which are passed from supposed necessity, and pending the maturing of general legislation, and which approach closely or go beyond the boundary fixed by the amendments in question. Each of such laws, when brought to the attention of the courts, must be considered with reference to all the circumstances involved, and which were in the mind of the law-maker, and the evident intention of the law. And in deciding the delicate questions thus arising, the opposition between the constitution and the law must be such as to produce in the mind of the court a clear and strong conviction of their incompatibility with each other, before it will interfere with the law-making power. *Fletcher* v. *Peck*, 6 *Cranch* 128.

In this case, it will be necessary to examine the official position held by the officers, in respect to whom the legislation that is challenged, was enacted, in order to ascertain the circumstances and object of the legislation and the intention of the act.

By a series of enactments, of which this court must take judicial notice, the legislature, within the last twenty years, has provided for the appointment of one judge of the Courts of Common Pleas, in twelve of the counties of this state, who is required to be of the legal profession, and who is called by the various acts, law, presiding, or president judge. The acts, though specially passed for each county, are substantially alike, and for the counties thus favored, provide a system of appointment to a responsible judicial office, which is designed to secure some legal knowledge and experience in the officer. This system, and the judges appointed under it,

extended over by far the larger part of the state. It would seem incontestable that "law or president judges of the Courts of Common Pleas" have thus been constituted a class so marked and important, and so differing from other judges, as to constitute, within the principles of the Van Riper case, a class by itself, and a fit object of legislation by general law. Legislation, therefore, respecting such law or president judges, seems to me not to be objectionable.

Nor does it seem to me that, under this constitutional requirement, a legislative act which, for the purpose of fixing the compensation of such judges, classifies them into separate classes, by reference to the population of the counties in which they serve, would necessarily be objectionable. The duties of such judges are well known to vary. Those located in populous counties are likely to be called on to perform more onerous duties, and their time will probably be more fully occupied. And so such a distinction, looking to the matter of fixing compensation alone, cannot be said to be in any respect illusive. On the contrary, it seems to me that, in so doing, the legislature resorts to a criterion reasonably likely to justify a distinction in respect to compensation, and that such a classification is entirely proper.

The objection that a distinction is made by the act between such judges as receive salaries and those that are not compensated by salaries, disappears, I think, on an examination of the various public acts to which allusion has been made. Without exception, so far as I can discover, the law or president judges mentioned, are authorized by law to receive annual salaries.

The last objection may be thus stated. The act in question enacts that " wherever an annual salary is *now* authorized by law to be paid to any law or president judge, * * * such judge shall receive no *per diem* allowance." * * * It is contended that the use of the word "now" limits the force of the act to certain localities, and that, although the act operates on all the group of objects to which it is directed, now in existence, it does not prescribe a general rule, because

it does not provide for such of similar objects which may yet be created.

This objection seems to me to be equally untenable. The particular provision of the constitution now in question forbids the creating, increasing, or decreasing of the compensation of any public officer during his official term, by any special, local, or private law. General laws, for these purposes, are not forbidden. The aim of the clause is to prevent the legislature from meddling with the pay of one public officer during his term of office, unless every other officer occupying a similar position, should be treated in the same manner. The clause does not, however, forbid or prevent special legislation fixing the compensation of public officers for future terms.

Now, the object of the act in question is to decrease the compensation of certain judicial officers, viz., the law judges in counties having less than one hundred thousand inhabitants, during their terms of office. We are unable to perceive how this object could be attained but by the act in question. Nor can we perceive why the act should have included judges thereafter to be created or appointed. They had no connection with the legislative design, since their terms of office are yet to commence. Nor could the power of the legislature to fix their compensation before the commencement of their terms, be restrained or abridged.

If there were any law judges now in office not receiving salaries, the contention made under this objection might have some weight, but, as has been said, all the law judges in counties having less than one hundred thousand inhabitants, now receive salaries.

The act in question seems to be within the power of the legislature to pass, and since it deprives all the law judges in question of the right to the *per diem* compensation, the relator is not entitled to a *mandamus*, and the rule must be discharged, with costs.